# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

NATRAN REZENE,　　　　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　　*Plaintiff,*　　　　　　§
　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　§　　　Civil Action No. 4:24-cv-759
　　　　　　　　　　　　　　　　§　　　Judge Mazzant
HARIBO OF AMERICA, INC. and　　§
MICHAEL BEST & FRIEDRICH LLP,　§
　　　　　　　　　　　　　　　　§
　　　　　　*Defendants.*　　　　　§

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are two Motions: (1) Defendant Haribo of America, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. #51); and (2) Defendant Michael Best & Friedrich LLP's Motion for Summary Judgment and Brief in Support (Dkt. #54) (collectively, the "Motions"). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds as follows:

> Defendant Haribo of America, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. #51) should be **GRANTED in part** and **DENIED in part**.

> Defendant Michael Best & Friedrich LLP's Motion for Summary Judgment and Brief in Support (Dkt. #54) should be **GRANTED**.

## BACKGROUND

The factual background of this case has been thoroughly examined in this Court's prior ruling and will be repeated only as is necessary here (Dkt. #61). Pertinent to the pending Motion is

Plaintiff's recruitment by Defendant Haribo of America, Inc. ("Haribo") as the company's "Head of Sales Development," a role created specifically for her (Dkt. #32 at ¶ 32; Dkt. #51 at p. 9).[1]

Plaintiff began working for Haribo on July 19, 2021, and remained with the company for over one year. While there, she took on multiple roles and experienced a wide variety of events, including those which would later form the foundation of the present lawsuit. Following personnel changes, restructuring, and questionable interactions with fellow employees, Plaintiff became determined to pursue a policy of severance with Haribo (Dkt. #64 at p. 9). Accordingly, on March 11, 2023, Plaintiff emailed a complaint letter to Haribo's management and its German parent company, seeking to benefit from a "mutual separation" with the company and alleging race discrimination, sex discrimination, and retaliation (*See* Dkt. #32 at ¶ 93; Dkt. #51 at p. 13; Dkt. #64-1 at p. 34). About two months later, on May 12, 2023, Haribo granted Plaintiff's request for separation, listing her request as the sole reason for her termination (Dkt. #51 at p. 16). By June 8, 2023, Plaintiff had declined at least one of Haribo's severance offers, and both parties could not agree on an appropriate resolution to Plaintiff's "mutual separation" proposal (Dkt. #51-1 at p. 48).

Although Plaintiff had successfully parted with her yearly salary at that time, she was not so quick to part with her company property. Instead, Plaintiff remained in extended and strategic possession of a company-owned Mercedes-Benz GLB 250, an Apple iPhone 12, a Dell Latitude 7400 Laptop, and various other items of property (the "Company Property") (Dkt. #51 at p. 17). In the weeks following Plaintiff's termination, Haribo turned to Michael Best & Friedrich LLP ("Michael Best") for assistance in retrieving the Company Property. Communication between

---

[1] Plaintiff was approached for recruitment multiple times by Haribo and was ultimately hired shortly after she "had the pleasure of being one of the speakers at a conference covering the topic of Diversity, Equity and Inclusion" (Dkt. #51-1 at p. 83).

Plaintiff and Michael Best quickly revealed Plaintiff's intent to hold the Company Property subject to her "voice [being] properly heard" and the subsequent execution of an "amicable separation agreement," or until Plaintiff could use the items to defend herself at trial (Dkt. #54-1 at pp. 18, 20). Following Plaintiff's silence in the face of five separate written requests for the Company Property, Michael Best contacted two police stations about the issue, indicating that Plaintiff had "stole[n] the company's property" (Dkt. #51 at p. 16; Dkt. #54 at p. 21). The affair ended when law enforcement officers confronted Plaintiff about the Company Property at her home (allegedly in front of her daughter) and the vehicle was repossessed (Dkt. #51 at p. 16). The rest of the Company Property remains in Plaintiff's possession at the time of this opinion (Dkt. #51 at p. 34).

Later that year, on or around November 7, 2023, Plaintiff filed a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") (Dkt. #32 at ¶ 120). The EEOC notified Plaintiff of her right to sue on May 23, 2024 (Dkt. #32 at ¶ 121). Plaintiff filed her initial Complaint against Defendants on August 21, 2024 (Dkt. #1). After a year of litigation, Plaintiff filed her Second Amended Complaint against Defendants on May 16, 2025 (Dkt. #32), asserting multiple claims against both. Against Haribo specifically, Plaintiff sought recovery for: (1) discrimination based on race and sex under Title VII and Texas Labor Code § 21.051 (Dkt. #32 at ¶¶ 123–30); (2) discrimination based on disability under the Americans with Disabilities Act (the "ADA") (Dkt. #32 at ¶¶ 131–37); (3) racial discrimination under 42 U.S.C. § 1981 (Dkt. #32 at ¶¶ 138–45); (4) retaliation under Title VII and Texas Labor Code § 21.055 (Dkt. #32 at ¶¶ 154–59); and (5) hostile work environment harassment (Dkt. #32 at ¶¶ 146–53). Against both Haribo and Michael Best, Plaintiff sought recovery for: (1) defamation (Dkt. #32 at ¶¶ 160–66); (2) malicious prosecution (Dkt. #32 at ¶¶ 171–74); and (3) intentional

infliction of emotional distress ("IIED") (Dkt. #32 at ¶¶ 167–70).[2] Plaintiff's claims arise from five alleged incidents, listed below in approximate chronological order:

(a) **Incident 1:** In April 2022, a black Haribo employee informed Plaintiff that a white director of human resources employee had repeatedly used the word "lynched" during meetings in the presence of black associates (Dkt. #32 at pp. 8–9; Dkt. #51-1 at p. 16). Specifically, the white employee stated that he would personally "be lynched" if a report was not submitted by the black employee by a specific date (Dkt. #51-2 at p. 35).

(b) **Incident 2:** In December 2022, Plaintiff was allegedly demoted and asked to take on the workload associated with an additional senior position (Dkt. #32 at ¶ 79).

(c) **Incident 3:** Prior to the end of 2022, Plaintiff observed a male employee complain that men should not be excluded from attending a "girls night out" dinner (Dkt. #51-2 at p. 23; Dkt. #51-1 at p. 32).

(d) **Incident 4:** In February 2023, Plaintiff witnessed an employee director of Haribo attend a dinner with other employees and ask the waiter to bring a cake to two presumably heterosexual male employees. According to Plaintiff, the employee director subsequently informed the waiter in a joking fashion that the two men were "gay" and that it was their anniversary (*See* Dkt. #32 at ¶¶ 82–84). As the waiter left, one of the subjects of the joke "laughed amusingly with the other mostly white employees" (Dkt. #32 at ¶ 84).

(e) **Incident 5:** On March 9, 2023, Plaintiff's assigned mentor employee encouraged her to wear more clothes like her "pink suit" she had previously worn at a sales meeting. The mentor stated that it would be useful for future meetings, reportedly telling Plaintiff that her pink suit ensures "you will stand out—that's the type of impact you want to have in the business life" (Dkt. #32 at ¶¶ 90–92).

After over a year of litigation, Defendants filed the present Motions seeking summary judgment on all of Plaintiff's claims (Dkt. #51; Dkt. #54). On October 20, 2025, Plaintiff filed her

---

[2] Plaintiff's malicious prosecution claim was dismissed by this Court in a previous ruling but has nevertheless re-appeared on the face of the Motions (Dkt. #61).

Response (Dkt. #64). Defendants filed their Joint Reply on October 27, 2025 (Dkt. #72). The matter is now ripe for adjudication.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News,*

*Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

### I.    Sex and Race Discrimination under Title VII

After careful review of the record and the arguments, the Court is not convinced that Defendants have met their burden demonstrating that there is no material issue of fact as to Plaintiff's Title VII claims entitling Defendants to judgment as a matter of law.

### II.    Racial Discrimination under 42 U.S.C. § 1981

After careful review of the record and the arguments, the Court is not convinced that Defendants have met their burden demonstrating that there is no material issue of fact as to Plaintiff's 42 U.S.C. § 1981 claim entitling Defendants to judgment as a matter of law.

### III.    Retaliation under Title VII, 42 U.S.C. § 2000e-3(a) and Texas Labor Code § 21.055

Plaintiff centers her retaliation claims on four issues. First, she claims Haribo demoted her in December 2022 (Dkt. #32 at ¶ 156). Second, she claims that the pay raise she received from

Haribo was less than what other non-black employees received (Dkt. #32 at ¶ 156). Third, she claims that Haribo dissuaded employees (or, at a minimum, herself) from making complaints about discrimination (Dkt. #32 at ¶ 157), and finally, she claims that she was involuntarily terminated (Dkt. #64 at p. 19). Because the Court finds that Plaintiff's alleged involuntary termination is sufficient to defeat Haribo's motion for summary judgment, it addresses Plaintiff's retaliation claims in light of the alleged involuntary termination alone.

"[D]iscrimination claims brought under . . . the Texas Labor Code are evaluated under the same analytical framework as Title VII claims." *Jackson, Jr. v. Corp. Serv. Co.*, No. CV H-11-4404, 2013 WL 11309365, at *13 (S.D. Tex. Apr. 17, 2013) (first citing *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011); then citing *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010)), *aff'd sub nom. Jackson v. Honeywell Intern., Inc.*, 601 F. App'x 280 (5th Cir. 2015). Title VII's anti–retaliation provision "'forbids an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation.'" *Id.* (quoting § 2000e–3(a)). In the absence of direct evidence of discrimination, district courts apply "the familiar *McDonnell Douglas* burden shifting framework" to determine whether a plaintiff's retaliation claim survives summary judgment. *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 839 (5th Cir. 2010) (per curiam); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1112 (5th Cir. 1998).

Under *McDonnell Douglas*, a plaintiff first must establish a prima facie case of retaliation by providing evidence of three elements, namely that: (1) the plaintiff engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* at

840. "Once the plaintiff makes his prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003) (citing *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000)). If the employer successfully articulates a legitimate non-discriminatory reason for the adverse employment action, "the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Id.*

Haribo contends that Plaintiff cannot satisfy the *McDonnell Douglas* burden-shifting framework for two reasons: (1) there was no "protected activity" prior to her termination; and (2) there was no adverse employment action because Haribo honored Plaintiff's request for a "mutual separation" (Dkt. #51 at pp. 31–32). At the outset of its analysis, the Court recognizes that Plaintiff has offered uncontroverted evidence that she made a complaint to Haribo regarding race discrimination, gender discrimination, retaliation, and sexual harassment on March 11, 2023 (Dkt. #64 at pp. 19–20). Thus, Haribo's first argument, that Plaintiff took no protected activity prior to her termination on May 12, 2023, is without merit. *See, e.g.*, *Dixon v. Moore Wallace, Inc.*, 236 F. App'x 936, 937 (5th Cir. 2007) (per curiam) (an employee engaged in a protected activity under Title VII when she sent a letter to the human resources manager complaining of race discrimination).

Haribo's second argument is also insufficient to support summary judgment on Plaintiff's retaliation claims. Both parties recognize that Plaintiff's complaint to Haribo contained the following language: "*to be very clear this not a letter of resignation* but a request to begin a mutual separation" (Dkt. #51 at p. 23 (emphasis added)). Both parties further recognize that Plaintiff sent

a follow-up email to Haribo asking for an "immediate investigation" into the alleged discrimination, along with an "amicable separation request" (Dkt. #51-1 at p. 87). The parties disagree as to whether her subsequent termination can constitute an "adverse employment action" necessary for Plaintiff to succeed under Title VII (Dkt. #51 at p. 24; Dkt. #64 at pp. 19–20).[3]

While an employer's acceptance of a voluntary resignation is not an adverse employment action, this Court is cautious to unilaterally deem Plaintiff's March 11, 2023 letter as a "resignation" capable of precluding her retaliation claims. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge."). Although Plaintiff requested separation from Haribo, she expressly disclaimed any interpretation of her notice or follow-up email as a "resignation" and further attempted to condition the termination of her employment on the receipt of certain benefits (Dkt. #51 at p. 23). Plaintiff's notice and accompanying email to Haribo thus suggest the presence of motives beyond mere resignation and together present an issue ripe for jury determination.[4] As a result, summary judgment is improper on Plaintiff's retaliation claims.

---

[3]  Plaintiff further complained that Haribo temporarily isolated her from other employees and its internal systems as the company investigated her discrimination claims (Dkt. #64 at pp. 19–20). Defendant has introduced evidence that Plaintiff was placed on two months of paid leave following her notice of alleged discrimination (Dkt. #72 at p. 16). Because these actions cannot constitute an "adverse employment action" under Title VII, the Court sees fit to simply mark them and move on. *See, e.g.*, *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 327 F. App'x 472, 484 (5th Cir. 2009) ("The entire peer review cannot be an adverse employment action, because 'an adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'" (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)).

[4]  District courts in other circuits have considered this issue in a similar fashion. *See Zarling v. Abbott Labs.*, No. 21-CV-23 (MJD/JFD), 2023 WL 2652575, at *6, 13 (D. Minn. Mar. 27, 2023) (denying summary judgment based on a fact issue regarding termination or acceptance of a "mutual separation" request); *see also Franklin v. Maximus, Inc.*, No. 21-CV-4367, 2024 WL 5077767, at *13 (N.D. Ill. Dec. 11, 2024) (marking the difference between an employer accepting an employee's severance agreement offer and an employer terminating the employee), *aff'd*, No. 25-1038, 2025 WL 3175260 (7th Cir. Nov. 13, 2025).

## IV.    Hostile Work Environment

Plaintiff supports her hostile work environment claim with the five incidents previously listed and discussed in this opinion. Viewing the facts in a light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to state a prima facie case for a hostile work environment claim, and that a jury could not find that she was subjected to an objectively hostile work environment on the basis of her race, sex, or gender.

To establish a hostile work environment claim, a plaintiff must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her membership in the protected group; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Smith v. Harvey*, 265 F. App'x 197, 202 (5th Cir. 2008) (per curiam). Importantly, the workplace must be permeated with discriminatory behavior that is "sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 67 (1986)). This standard "can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Finally, "[t]he alleged conduct must be objectively *and* subjectively hostile or abusive." *West v. City of Houston*, 960 F.3d 736, 742 (5th Cir. 2020) (emphasis added).

Haribo argues that summary judgment is warranted on Plaintiff's hostile work environment claim for two reasons: first, that Plaintiff has not introduced evidence to indicate the presence of any "severe or pervasive conduct based on race or sex that affected a term or condition" of her

employment beyond her subjective opinion; and second, that Haribo did not fail to take prompt remedial action (Dkt. #51 at pp. 29–30; Dkt. #72 at pp. 11–12). Of the two, Haribo's first argument more readily supports summary judgment on Plaintiff's hostile work environment claim, as Plaintiff has raised evidence in her Response suggesting that the in-office use of the phrase "lynched" occurred at least twice after an employee informed Haribo's human resources department of the issue (Dkt. #64-1 at p. 42). Plaintiff's hostile work environment claim thus stands or falls according to the severity and pervasiveness of the facts supporting the alleged workplace harassment.

The Court begins its analysis of Haribo's remaining argument by noting that Plaintiff meets the first element of a hostile work environment claim by virtue of being a black woman. *See, e.g.*, *Noiel v. Roseland Mgmt., L.L.C.*, No. 24-40520, 2025 WL 1219196, at *3 (5th Cir. Apr. 28, 2025) (per curiam). However, the five incidents brought forward by Plaintiff, considered together, are insufficient to raise a genuine issue of material fact in support of the second and fourth elements of her hostile work environment claim, that she was "subjected to unwelcome harassment" sufficient to "affect[] a term, condition, or privilege of employment." *Harvey*, 265 F. App'x at 202. This finding is predicated on the Supreme Court's repeated holding that "simple teasing, offhand comments, and isolated incidents (*unless extremely serious*) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added). Each incident complained of by Plaintiff is at most "'the equivalent of a mere utterance of an epithet that engenders offensive feelings,' but [does] not suffice to survive summary judgment." *Id.* at 744–45 (5th Cir. 2004) (quoting *Harris*, 510 U.S. at 21–22). Furthermore, Plaintiff "cannot show that her harassment was frequent or pervasive," as every issue

she complains of is either "isolated or infrequent." *West*, 960 F.3d at 742 (finding summary judgment appropriate where incidents complained of occurred "once," "twice," or merely "occasionally").

For instance, the first alleged incident of harassment concerns Plaintiff's belief that a white, naturalized immigrant employee had used the term "hanged" and "lynched" in the presence of a certain black employee (Dkt. #32 at pp. 8–9). However, the evidence presented indicates that the white employee was using the term in reference to his own person in a self-derogatory manner, and that the term was not used more than three or four times over a period of months (Dkt. #51-2 at p. 35). As the Supreme Court has noted, "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII.'" *Meritor*, 477 U.S. at 67 (1986) (first quoting *Rogers v. E.E.O.C.*, 454 F.2d 234, 238 (5th Cir. 1971); then quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). The remaining incidents involve a subjectively insufficient pay raise, an increased workload assignment, and a string of one-off comments made by different employees over the course of a year. Furthermore, although the workplace comments appear to form the backbone of Plaintiff's hostile work environment claim, the evidence presented indicates that they are all either indirect, innocent in nature and effect, or simply disconnected from Plaintiff's membership in a protected class or her employment at Haribo altogether. Plaintiff's five alleged incidents, taken together, are thus utterly insufficient to support her hostile work environment claim in the context of summary judgment. *See Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999).

The Fifth Circuit's emphasis that "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace" is not lost on this Court. *Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999). In its Motion, Haribo raised evidence that Plaintiff was retained through multiple employment restructuring protocols, provided a pay raise according to her workplace evaluation, and received an "Achieves Expectations" rating from her supervisor (Dkt. #51 at p. 29). In response to Haribo's presentation, Plaintiff stated her conclusory opinion that "the ongoing harassment affected her ability to continue her employment" and that she became "anxious and was intimidated and believed that by making a complaint against the executives of the company there was little chance she could continue in her employment" (Dkt. #64 at p. 18). None of Plaintiff's allegations rise above mere conjecture and are wholly unsupported by any facts to bring them out of the realm of Plaintiff's subjective opinion. In light of the Fifth Circuit's repeated "caution[] that 'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment," this Court finds that Plaintiff's blanket statements have failed to raise a fact issue on either the objective nature of the alleged harassment or the impact that any such alleged harassment had on her employment. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).

Accordingly, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether Haribo created or tolerated a hostile or abusive work environment.[5] A jury could not rationally infer that the conduct of Haribo was objectively "sufficiently severe or pervasive so as to alter the conditions of employment and create a hostile work environment," and her claim must therefore be dismissed with prejudice on that ground. *Jackson v. Cheddar's Inc.*, No. CIV.A.6:02-CV-101-C, 2003 WL 23315465, at *10 (N.D. Tex. Nov. 19, 2003).

## V.    Disability Discrimination

In her Response, Plaintiff stated that she "concedes her Americans with Disability Act claim" (Dkt. #64 at p. 6 n.1). Because "[a] party's concession of an issue means the issue is waived and may not be revived," further review Plaintiff's ADA claim is unnecessary. *Smith v. United States*, 328 F.3d 760, 770 (5th Cir. 2003).

## VI.    Defamation

Plaintiff's defamation claim addresses Defendants' filing of an allegedly false police report concerning her continued possession of the Company Property as discussed in detail above. Defendants argue that summary judgment on Plaintiff's defamation claim is warranted on two grounds: first, that Plaintiff failed to bring the claim within one year of its accrual, in violation of

---

[5] Fifth Circuit precedent highlights just how impossibly far the facts from this case are from supporting a sufficiently severe hostile work environment claim. *See Hockman*, 122 F. App'x at 745 (finding that summary judgment on a hostile work environment claim was proper where allegations of six separate and personal incidents between a female employee and male employer contained facts suggesting the employer had made inappropriate comments to the employee, "slapped her on the behind with a newspaper," grabbed her "breasts and behind," and "held her cheeks and tried to kiss her," among other things. The Fifth Circuit found the relevant comments were "boorish and offensive, but not severe," and noted that no estimation was given regarding the repetitive nature of the conduct); *see also White v. Gov't Employees Ins. Co.*, 457 F. App'x 374, 381–82 (5th Cir. 2012) (upholding summary judgment against a hostile work environment claim where an employer's use of the n-word and multiple racial phrases in an employee's presence was found to consist of "isolated incidents" and "pale in comparison, both in severity and frequency, to the kinds of verbal harassment that this court and other circuits have held would support a Title VII hostile work environment claim").

the statute of limitations outlined in Section 16.002(a) of the Texas Civil Practice and Remedies Code; and second, that the police report cannot constitute a "false statement" as required by Texas law (Dkt. #51 at pp. 32–34; Dkt. #54 at p. 21). In response, Plaintiff claims that an applicable discovery rule rescues her claim from the traditional limits imposed by the statute of limitations and that the report contained an actionable "false statement" because she had no "inten[t] to deprive" Haribo of its property, "but rather [intended] to ensure that she could properly defend herself in any dispute" (Dkt. #64 at pp. 21–22). Because the Court finds that the applicable statute of limitations bars Plaintiff's defamation claim, it need not resolve the issue of the alleged falsity contained in the report.

Section 16.002(a) of the Texas Civil Practice and Remedies Code establishes a one-year statute of limitations for defamation claims. *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a). "The statute of limitations generally accrues when the allegedly defamatory material is circulated or published, but the discovery rule may toll accrual." *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1011 (S.D. Tex. 2018). The discovery rule applies solely where "the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011) (citation modified). "An injury is inherently undiscoverable if by its nature, it is 'unlikely to be discovered within the prescribed limitations period despite due diligence.'" *Id.* (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996)).

The Court begins its analysis of Plaintiff's defamation claim where it began: with the initial filing of the police report. The origin of the report is found in a statement that Michael Best provided to police on June 9, 2023, and the report itself was physically created on June 12, 2023 (Dkt. #51 at p. 33). As noted above, law enforcement officers acted on the report by visiting Plaintiff

at her home on June 14, 2023 (Dkt. #54 at p. 20). Defendants argue that the cause of action accrued on that date because the law enforcement officers informed Plaintiff of the existence of the report, while Plaintiff alleges that she was merely made aware of a "complaint" at that time (Dkt. #54 at p. 20; Dkt. #64 at p. 20). Had additional evidence not been entered into the record, this factual dispute might have posed an intriguing question of material fact for the jury to determine. However, Plaintiff's argument is irreparably undermined by the evidence currently before the Court. Indeed, Plaintiff testified in her deposition that on the day of the confrontation, June 14, 2023, Plaintiff wrote to an attorney for Defendants claiming that the police "deemed this an invalid and *false police report*," and that she wanted to "caution you, and your office, regarding the *dishonest manner* that you filed these police reports" (Dkt. #51-1 at p. 49 (emphasis added)).

While Plaintiff attempts to color her written words as a misinterpretation of her own state of mind, the Court finds that Plaintiff's express use of the phrase "false police report" and "dishonest manner" indicates clear awareness of the existence of potentially defamatory material that could have easily been uncovered by the exercise of a minimal amount of due diligence. Far from being "inherently undiscoverable," Plaintiff not only personally experienced the downstream effects of the police report in her confrontation with the police, but also referenced, in her own words, the allegedly "invalid and false police report" in the unique context of the Company Property dispute on July 14, 2023 (Dkt. #51-1 at p. 49). *See S.V.*, 933 S.W.2d at 7.

That is not all. Plaintiff further testified that she physically received the police report from her attorney around "three or four days" after July 19, 2023 (Dkt. #51-1 at p. 56). Because "discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well," the Court finds that the

discovery rule cannot apply to toll Plaintiff's defamation claim. *Id.* Plaintiff's decision to file her Original Complaint on August 21, 2024, over a year after the end of July 2023, is thus fatal to her defamation cause of action under Texas law (Dkt. #1).

## VII.     Malicious Prosecution

The Court previously dismissed Plaintiff's malicious prosecution claim (Dkt. #61). Specifically, it found that Plaintiff had failed to plead facts, taken as true, to satisfy the first element of a malicious criminal prosecution cause of action (Dkt. #61 at pp. 6–9). Although this Court invited Plaintiff to introduce additional facts supporting her malicious prosecution claim by amending her pleadings, Plaintiff has instead elected to stand by her Second Amended Complaint (Dkt. #32). As a result, Plaintiff's malicious prosecution claim remains dismissed in its entirety and warrants no further discussion.

## VIII.     Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff's IIED claim should be dismissed because it cannot be applied in its appropriate gap-filling capacity in this case (Dkt. #51 at p. 34; Dkt. #54 at p. 29). Plaintiff, on the other hand, argues that this Court's previous dismissal of her malicious prosecution claim permits her to bring an intentional infliction of emotional distress claim on the same factual foundation as her defamation claim (Dkt. #64 at p. 24).

Under Texas law, "a plaintiff may not bring an [intentional infliction of emotional distress] claim when other statutory remedies are available for the underlying conduct." *Pacheco v. Zanios Foods, Inc.*, 502 F. Supp. 2d 508, 512 (W.D. Tex. 2006) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger*, 144 S.W.3d at 447). "Even if other remedies do not explicitly

preempt the tort, their availability leaves no gap to fill." *Id.* This remains true even where, as here, Plaintiff's alternate avenues of recovery are denied. *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 471 (S.D. Tex. 2010) (granting summary judgment on an IIED claim for its failure to act as a "gap filler" while also granting summary judgment on the claims it was associated with).

Plaintiff's inability to bring her malicious prosecution claim on account of its prior dismissal is not relevant to this Court's determination that IIED is inappropriate as a matter of law. *Zeltwanger*, 144 S.W.3d at 448 ("a plaintiff's failure to establish his or her [alternative] claim does not mean that the plaintiff has a claim for [IIED]. If the gravamen of a plaintiff's complaint is the type of wrong [another] remedy was meant to cover, a plaintiff cannot maintain an IIED claim . . . ."). Under the facts presented by her Second Amended Complaint and her Response to the pertinent Motions, Plaintiff has supported her IIED claim exclusively on the same false police report that constitutes the sole issue behind her defamation claim discussed above (Dkt. #64 at pp. 24–25). As a result, Plaintiff's IIED claim cannot fulfill its purpose as a "gap-filler" tort and is appropriately dismissed at summary judgment. *See id.*

## IX.    Applicability of the Attorney Immunity Doctrine

In the interest of a fully exhaustive review of the pleadings, the Court concludes its opinion by addressing Michael Best's best alternative argument for summary judgment: whether the claims raised against it are barred by attorney immunity under Texas law. Under the attorney immunity doctrine, attorneys are protected "against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of 'legal' services involving the unique office, professional skill, training, and authority of an attorney *and* (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021). "An attorney who pleads the affirmative defense of attorney immunity

has the burden to prove that his alleged wrongful conduct . . . is part of the discharge of his duties to his client." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 484 (Tex. 2015). The Fifth Circuit has recognized that "attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019).

Both parties implicitly agree that all of Plaintiff's claims against Michael Best stem from the publication of an allegedly false police report (Dkt. #54 at p. 18; Dkt. #64 at pp. 22–23). Michael Best argues that the creation and subsequent filing of the police report fell within the scope of the attorney immunity doctrine, while Plaintiff's sole contention in her Response is that Michael Best was not given express authorization by Haribo to take either action and thus cannot seek refuge under the attorney immunity doctrine (Dkt. #64 at p. 23).

Plaintiff's argument misinterprets the legal standard proposed by the attorney privilege doctrine. The uncontroverted evidence indicates that Haribo retained Michael Best in a representative capacity to negotiate Plaintiff's separation and to recover the Company Property (Dkt. #32 at ¶ 113–114; Dkt. #72 at p. 23). In consideration of the Fifth Circuit's "broad" application of the doctrine, the Court finds that the creation and filing of a police report to facilitate the return of the Company Property "falls squarely within the scope of the firm's representation of its client," and this remains true whether Haribo expressly authorized the action or not. *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 506 (5th Cir. 2019) (citation modified) ("Although not limitless, the doctrine's application is broad."); *Ironshore*, 912 F.3d at 767; *see also King v. Deutsche Bank Nat'l Tr. Co.*, No. A-14-CV-740 LY, 2014 WL 11429329, at *3 (W.D. Tex. Oct. 28, 2014) (collecting cases) ("[T]he immunity granted legal counsel is not limited to the litigation context."), *report and recommendation adopted*, No. 1:14-CV-0740-LY, 2014 WL 11443911 (W.D. Tex. Dec. 17,

2014). The attorney privilege doctrine asks the Court to consider whether the relevant conduct is "the kind of conduct in which an attorney engages when discharging his duties to his client," not whether a specific action or legal strategy was expressly authorized by the client. *See Cantey*, 467 S.W.3d at 482 (citation modified). Given that attorneys routinely create and file police reports on behalf of their clients according to their particular knowledge and skill, Michael Best's actions constitute valid expressions of its professional duties owed to Haribo.

Furthermore, Michael Best has raised sufficient evidence to prove that it filed the allegedly false police report in an adversarial context. Plaintiff's separation from Haribo involved her strategic retention of Company Property to secure a favorable severance agreement. Michael Best was retained to address this contentious situation and resolve it in Haribo's favor. Thus, although Michael Best's "conduct did not occur during formal litigation, the context was sufficiently adversarial and litigation-like" to support its attorney immunity defense. *Dorrell v. Proskauer Rose LLP*, No. 3:16-CV-1152-N, 2017 WL 6764690, at *5 (N.D. Tex. Nov. 2, 2017).

Under the facts presented, this Court refuses to "conclude that [Michael Best's] actions 'did not involve the provision of legal services,' or that [it] engaged in acts that were 'entirely foreign to the duties of an attorney.'" *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 349 (5th Cir. 2016) (first quoting *Cantey*, 467 S.W.3d at 482; then quoting *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882)). As a result, the Court finds that Michael Best has successfully availed itself of the attorney immunity defense, and that dismissal with prejudice is appropriate for Plaintiff's claims against Michael Best on that ground.

## CONCLUSION

It is therefore **ORDERED** that Defendant Haribo of America, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. #51) should be **GRANTED in part** and **DENIED in part**.

Additionally, it is **ORDERED** Defendant Michael Best & Friedrich LLP's Motion for Summary Judgment and Brief in Support (Dkt. #54) should be **GRANTED**, and Defendant Michael Best & Friedrich LLP is hereby **DISMISSED** with prejudice.

It is further **ORDERED** that Plaintiff's hostile work environment claim is **DISMISSED** with prejudice.

It is further **ORDERED** that Plaintiff's ADA claim is **DISMISSED** with prejudice.

It is further **ORDERED** that Plaintiff's defamation claim is **DISMISSED** with prejudice.

It is further **ORDERED** that Plaintiff's intentional infliction of emotional distress claim is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

  SIGNED this 16th day of December, 2025.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE